and Mr. Phillips, I guess we'll hear from you. Good morning, Your Honors, and may it please the Court, the District Judge in this case committed essentially three basic mistakes. In the first instance, he completely misapplied Section 1117A with respect to the enhancement of damages. Two, he misinterpreted the term exceptional case within the meaning of that statute and that same provision. We've now got a new definition, don't we, as of a couple of days ago? We do have a new definition, and it's quite clear that under the new definition this is not an exceptional case. I don't think it was an exceptional case even under the reasoning the Judge put forward before, but I'll get back to that. And then finally, the District Judge erred by just issuing an equitable remedy that is nationwide in scope without giving due regard to the issues of comity. So let me go back to the first one, which is the enhancement of damages. The statute is quite clear that this is not a treble damages provision. Simply because you are entitled to either profits or damages in a particular case doesn't mean that you get treble damages. Treble damages, in fact, the ceiling when you have actual damages. Of course, in this case we don't have any actual damages. All we have are the profits, which were disgorged from my client. Do the parties agree that this was a profits case and only a profits case? My guess is my friend, Mr. Estrada, will say no, but the reality is, I don't know how you could read it any other way, that the... I thought that when he closed to the jury, he told them this is a profits case. And I would hold him to that. It's exactly what he said to the jury. And that was the number they presented to the jury. Exactly. The only discount from the exact number he asked for is the jury's determination that... Well, I may ask you more questions about this later after we talk to Mr. Estrada, but if we assume this is a profits case, then your argument is the statute then directs specific rules for deciding a profits case. Well yes, there are specific guidelines to follow with profits that are different from damages, but there are two sort of overarching principles here, which is regardless, it cannot be punitive. And you have to make a determination that something is inadequate. And that's the fundamental mistake here. The district judge treated this as an ordinary treble damages provision, when it is exactly the opposite of that. He must make a determination that somehow something is inadequate, that the compensation is inadequate. He never made that determination. And then he has to make a determination that whatever amount he gives beyond what the jury has awarded is not in any sense punitive, that it is fully compensatory. So having failed to make either of those determinations, there was no basis for an enhancement in the circumstances of this particular case. At a minimum, we're entitled to a remand. I think you could argue that having been given exactly what the trial lawyer asked for and not having put on any evidence that there was any inadequacy in the compensation in the remedial hearing portion of the case, that portion ought to just be set aside. Why do you think the district judge did it? Why do you think the district judge did that? I think the district judge was confused by the citation to the court of the Larson decision, which said that the treble damages ordinarily apply. Unfortunately, Larson, unfortunately for the district judge, Larson is a 1117B case, which is very different and which specifically says, typically, unless there are extenuating circumstances B cases involve counterfeiting. Counterfeiting, exactly. Much more serious offense. We don't have a counterfeiting case here. We do not have a counterfeiting case here. It seems to me if we can agree, and I guess both sides would have to help us on this, but it seems like this case is a profits case involving A. Yes. I don't think, there's no question it's an A case. No doubt about that. I think it's, I don't think there's a serious dispute that it's a profits case either. And it's correct that there was no attempt to break down the profits in the sense that to exclude, for example, the profits from the Vondrell Tows in the 6th and 8th Circuit Right. Right. Right. Right. They discouraged the entirety of our profits, regardless of whether they were used and under any circumstances. That's correct. Did you raise an objection to the damages aspect on the basis that in two circuits the law, it did not violate the law? No. We did not make that argument with respect to the damages. But you did with respect to equitable remedy. We did with respect to the injunction, Your Honor. To go to the exceptional case determination, obviously the Supreme Court has told us recently in the Icahn decision, which sadly I lost. Let me just ask one question to take back to, was the Larson case, I don't remember, was it argued to the district judge below? Yes, it was argued to the district judge below. And so the arguments you made below is exactly the arguments you're making to us? Essentially, yes, Your Honor. I mean, we certainly said 1117A controls under the circumstances of this case. The other side, obviously, went to Larson and the judge got confused. And you said to the judge, Larson doesn't control. Right. Right, Your Honor. With respect to the exceptional case, the standard now is quite clear. And while the district judge obviously has wide discretion to decide an exceptional case, it doesn't have discretion to ignore the legal standards that apply under these circumstances. And the determination is based on the substantive strength of a party's litigating position, not anything else, based on both the governing law and the facts of the case, or the unreasonable manner in which the case was litigated. And first of all, it is, for me at least, impossible to understand how anybody could complain about the substantive position that we have taken in this litigation all along, when one circuit has clearly held that what we did here is perfectly legal, and another circuit has held that what we did here is completely unchallengeable by Georgia Pacific. So, clearly, that doesn't satisfy that element of the exceptional case test. And then, the alternative, which is the dilatory or any other kind of litigating tactics, the district judge certainly has never criticized us on that score, to be sure that this litigation has gone on for some time, but the case has also been before this court three times. But you had engaged in that litigation strategy before those other circuits ruled. Do I have the time right? No, we did, in fact, engage in the behavior before, obviously, before we were sued. I mean, behavior, so that, is your view, what, that that controls the question? Another court deciding that issue, deciding in your favor would control that issue? No. Or is there strong evidence of? It just demonstrates that the position we've taken is a reasonable litigating position, and therefore, cannot be the basis upon which a court could modify the American rule, which applies for, you know, the fees don't get shifted. You pay your own legal fees as you go along. That's the American rule. When you're going to deviate from that, you have to have some significant basis for doing that. We have to have done something wrong. Litigating a position, being a defendant, particularly as a defendant, being sued for  correct seems to me the height of saying something is not an exceptional case. And again, as I say, the judge made no findings that what we did. It was found to be correct in one case, not two, right? The other went on preclusion. That's true. The other went on preclusion. But that would, of course, totally justify taking a litigating position in virtually any other court that says we can at least, you know, as litigation goes forward, we certainly should be allowed to rely on the Eighth Circuit's decision. That's why I was asking the question, though, about relying on it and taking the position or doing the act before you had that court decision. I was just trying to understand. It certainly strikes me that it strengthens your hand after you get a court to say that. Maybe not completely puts argument contrary out of the window, but at least you can say how unreasonable can it be if those other judges felt that other circuit felt that way. But I was just trying to see what your thought about it was before, you know, the effect of the subsequent circuit decision on how we look at the conduct that occurred before that decision was rendered. Right. But the question I think the court has to ask itself is at the time we are sued, do we have a legitimate basis for doubting that we are involved in contributory infringement when it is standard practice in the industry to engage in this kind of conduct and no one has ever found it to be invalid? And then we find as we litigate it forward that we are correct on that score. So I think we were at a perfectly legitimate position at the outset of the litigation and it just became stronger with time. That's the only argument I'm trying to make there. And then with respect, so there is no basis for an exceptional case finding and therefore the attorney's fees and the prejudgment interest should be set aside on that ground. And then finally with respect to the injunctive relief, there's no question that the Eighth Circuit's behavior valid. At a minimum, the district judge owed us a duty to take that into account. Principles of comedy clearly demand that some kind of equitable adjustment be made to reflect that. This is a very strange proposition that we find ourselves in, these three circuits. We've come out on different sides on liability and we have an injunction that purportedly is nationwide. With respect to a place like California, we have an injunction that tells you in California you can't do it. And the question is why is our ruling any stronger than the ruling of the Sixth and California for a court there. We sort of use our injunctive power to override the precedential power of the other two circuits. I think it's sort of unseemly that we should be determining the law on other circuits one way or the other. We have decided for the Fourth Circuit what we've decided and I'll actually ask Mr. Estrada this, but it seems to me that maybe the injunctive relief should be limited to the Fourth Circuit. Is that your position? That is our position in the first instance. It should be limited to the Fourth Circuit in order to allow other circuits. Your second position is to exclude the Sixth and the Eighth. Exactly, Your Honor. And if you don't want to exclude the Sixth, then you should at least exclude the Eighth. But you don't argue, you don't argue, do you, that a case decided in the Fourth Circuit should never include as a remedy a nationwide injunction? No, absolutely not. The court has... The court clearly has the authority to do that, but obviously like all authority it has to be exercised with equity in mind and comity to... Right, but I was just thinking about California. They may not ever like what the Fourth Circuit decides in a case, but that doesn't mean that we couldn't issue, a court in this circuit couldn't issue an injunction that would affect them, notwithstanding their misgivings about it. Right. And I think what makes this case somewhat different than most is obviously the behavior of Georgia Pacific in engaging in serial litigation and bringing these issues up in a variety of different circumstances and in different circuits. And as a consequence of that, you end up in this very unusual and frankly uncomfortable situation of three courts going in different ways. My question though was not to take issue with the questions that I understood Judge Shedd to be presenting. My question was a seemliness about our... We clearly have the power to issue a nationwide injunction, I mean every court does. But now we have a circumstance where three courts are at odds with each other and I suppose just on a theoretical basis, the Sixth and the Eighth could issue injunctions or declaratory judgments and say that we find this legal wherever you are. You're the parties and you're litigating and as a matter of United States law, we find your conduct legal. That's not the... That's a hypothetical, but my quick concern was that our nationwide injunction, even if you exclude the Sixth and the Eighth, might be interfering with the authority of the Sixth and the Eighth with respect to the states that have not yet addressed the issue. And that's exactly the area of litigation, Judge O'Mara. Yeah, I know. And I don't know. It still may be, since we find it a violation here, that we should issue the injunction as far as it can reach without trampling directly on the Sixth and the Eighth. But I find there's an unseemliness about this national battle right now and I would invite my colleagues in Washington to come down and take care of this for us. I couldn't agree with you more, Your Honor. Mr. Phillips, let me ask you about the prejudgment interest issue. Are you contending that the exceptional case standard is defined in octane fitness for attorney's fees? Are you asking us to graft that onto the prejudgment interest analysis? Yes, Your Honor. In which we have not done that in the past? Well, as I understand it, the only basis for prejudgment interest in this circumstance generally is if there's an exceptional case. If you want to say exceptional case doesn't get you there, then there's no other basis in the statute. What cases in the Fourth Circuit say that, that you have to have an exceptional case to get prejudgment interest? Don't our cases refer more to the discretion of the trial court and have refrained unlike the Second Circuit? Right, but I don't have any case authority in the Fourth Circuit on that particular point, Your Honor. What I do have is the statutory scheme. So what is the best argument that we should just import the octane fitness analysis regarding attorney's fees in exceptional circumstances over to the prejudgment interest context? Because they are different concepts. One is to accurately represent the value of the judgment and the other is to compensate the parties for bringing a reasonable case to court. Right. Although, again, the whole provision is profits, damages, and costs. I understand my time is up. Is to my mind a very carefully reticulated provision to deal with everything that goes to the sort of remedial aspects of the monetary remedial aspects of the case. And there's no mention whatsoever of prejudgment interest in that context. So I realize that in this court normally silence is enough, but here is a situation where you've identified costs as a specific element as something that gets in under certain circumstances and it doesn't say that. So my first argument would be that the absence of prejudgment interest in this particular statute suggests the Congress did not intend it. What's that? It's in B. Right. Which doesn't apply to this particular case. Right. The argument might be that if it's stated in B and not A, there might be some deliberateness in that. I don't know. Right. Well, I think we would presume that that's deliberate, Your Honor. Or it could just leave A open to the common law. And there it would seem to me that that's why you would go back to the exceptional case determination. Because if you have an exceptional case, then it's perfectly reasonable in that situation to say, OK, then you get prejudgment interest. And other courts have looked at it that way and it seems sensible to me. But in this context, we know there is not an exceptional case and therefore, you shouldn't have prejudgment interest. Nothing in A says it. What's the amount of money involved in the prejudgment interest? Do you remember? It's a big number. I remember that. OK. All right. We'll hear you back on rebuttal. Mr. Estrada. Thank you, Judge Niemeyer, and may it please the court, I'm very happy to be here today. Something very striking that I did not hear during Mr. Phillips' argument, and that was any reference to the record in the district court. And the reason for that is practically the entirety of what he had argued today and the bulk of what he argued in his brief was never raised in the district court. There was never any fight or reference in the district court as to how profits are different from damages or subject to different standards. The word comity was never mentioned. I could go on and on and on. What the judge had in front of him was an affirmative presentation in a- An objection to the application of the, our decision in, what's the case, Langs, Larson. Larson? Larson? No. Larson. Was there an objection to the application of Larson? No. We cited it as an analogy to what was appropriate here, and I'll get to this. And they never cited it back or said that it's not an appropriate case to be considered in this context. Well, I asked that question. Yes. I asked that question. And we cited it in our papers. We consistently took the position that it furnished a valuable analogy to what was going on here. Now, the Larson case on the page that the district court cited is also very informative because it deals with the first question that Judge Niemeyer asked, and it was this. Is this a profits or a damages case? By the time we got to the remedies hearing, the only thing that was available to the district court was the damages sentence in section 1117. And the reason for that is that as permitted by circuit law, Larson, the case went to the jury to find damages based on an evidentiary presentation of profits. Larson says, and I could quote it, as permitted by subsection A, you know, the trial found damages based on the defendant's profits. Now profits- That's because B references A. No. It is because under- It starts out in assessing damages under subsection A for any violation of so-and-so, which involves counterfeit. Right. But the point I'm making is slightly different. All right. You know, the point is that profits can be relevant as a matter of forensic proof to be a proxy for the damages that the plaintiff suffered. They can also be relevant under statute, which allows both profits and damages as a question when the claim is one for disgorgement. What happened here was that we tried the case to the jury without objection on the theory that the profits were a proxy for the damages that we suffered. And the jury verdict, which is at page JA575, has a finding that the damages that we suffer are X sum. But that jury verdict was never- But the jury was told by, I don't know, by you or someone on your side, that number one, this is a profits case, and actually this case involves $74,000 in profits, or the number's actually a little bit under, but the- $794,000. Oh, 700. Yeah. Excuse me. $794,000. And the jury, and you said the jury gave you 100% of the profits that you asked for. Not quite. They actually wrote a note- They added up the number. And it's a little less than $794,000, isn't it? They took the number and made an entry by hand in the verdict form to say that the profits or the damages that they were giving us ran from the date of the cease and desist order. And what really happened- Well, it was the range of profits on that chart. Well, yes, I understand that, Your Honor. I don't think this point is controverted. It may be. This is somewhat important, actually, for me, because I must say, if this is a profits case, and that's the theory the jury considered the case, I think the statute directs how we handle the case. And it allows the various things, but it starts out, it says, in assessing damages. And then it says, if the court shall find that the amount of recovery based on profits is either inadequate- In other words, it has different standards, whether the remedy is based on profits or whether it's based on damages. And I think it's a little bit like a cookbook. You just follow the recipe. And my point is that by the time we got to the remedies hearing, where these directions might be relevant, there had been an unappealed jury verdict that had a finding, not of profits, but of damages. So as the case came to the district court after the remand from this court for the remedies hearing, the only thing that we argued and the only thing that they talked to the judge about was damages. There was never any mention to anyone that, wait a moment, they're asking for something that is not allowed under the statute. The supposed dichotomy, which appears under statute and may be relevant in some cases- What was the evidence of damages, other than the profits? The evidence was based on profits, and that's what is allowed- And it wasn't even the net profits. It was just gross profits throughout the country for every year. Let me get to the point of the scope of the remedy, but let me finish this first. As a matter of forensic proof, the quality or type of the evidence that we might have put in to show what our damages were does not take away from the fact that there was a jury verdict finding as a fact that there was an amount of damage. And that that was not appealed to this court. So that by the time we were talking about the remedies, even if at some point there was a dichotomy that could have been brought to the court's attention, A, it wasn't brought to the court's attention, and B, it wasn't brought to the court's attention because by that time we were dealing with a finding by a jury that these were damages. What if the attorney stands up there, and I want to actually take a look again at the statements and the arguments as the case was presented to the jury, but the attorney says our damages in the case constitute profits in the amount of $794,000. And the jury comes in and says, here's $794,000 for damages. You're saying that because they used the label on the form, damages, this was not a profits case? I am saying that because the jury found damages as a fact, Judge Boyle was entitled to treat this as something that failed. Well, profits, this is a damage, it's a form of damage, it's just that the statute breaks down that if it's based on profits, if the recovery is based on profits, there is a prescription as to what you should do. If it's based on damages, there is another prescription. It seems to me you're wasting your argument. No, no, no. And I'm trying to answer the question. I would just simply say that a litigant who believes the distinction is relevant should bring it to the court's attention. Moving on to the scope of the remedy, I will start by pointing out that the whole notion of comedy was never mentioned to the district court. What was mentioned to the district court was an argument that was based expressly on preclusion. The court was told at pages J, A, 833, and 849 that the reason there could not be a nationwide injunction was not that there was cases having to do with comedy. None of the cases cited to you on the subject of inter-circuit comedy was cited to the district court. The court was told that Bundrel had lost the question of preclusion in the Court of Appeals but could still rely on it on behalf of distributors who may wish to assert it in other courts. What about the practical question before us in terms of the Sixth and Eighth Circuits where this practice is not infringing? How do we say that there can be a nationwide injunction when the Sixth and Eighth Circuits have said that there is not infringement? Well, I think the only court that actually has addressed a question of infringement was Myers. But then for you, you held it to have preclusive effect. And as this court pointed out in its last opinion, the issues were somewhat different. It was a local market. But accepting that you could have a litigant other than Bundrel, you know, raise the... But it was the issue of whether the practice constituted infringement under the Lanham Act, wasn't it? Well, the question was whether the practice was infringement in the context of the evidence of that case. Correct. Yes, I take your point. And the answer ultimately is governed by circuit case law in this circuit. And I would direct Your Honor's attention to this court's ruling in Virginia Society. Right, right. I understand. But you see, it seems to me that you're not leaving us with any help in terms of how to address this. That what you're saying to us is, well, they didn't make the right objection down below because they were really emphasizing preclusion. They weren't emphasizing comedy. But that doesn't help us in terms of the injunction here that clearly can't stand, it seems to me, as to the sixth and eighth. And the question to me, the real question is, does it extend to the rest of the country? And so if you could help us with that analysis, that would be most appreciated. Let me address that issue. Which is to say, the reason I was going to mention the Virginia case is because you had a circuit conflict in that case. And this court's opinion expressly discussed the fact that the Ninth Circuit in the Fergus case had basically upheld the FEC view of the law. And the FEC had basically taken the Ninth Circuit law and put it in a reg. This court later found that that reg was not consistent with the First Amendment. Now the holding of this court was that as to the parties before it, the injunction could be nationwide. But that others, others can raise their laws under the law of the relevant circuit. And so, you know, the reason why this is a problem that in fact is not a problem at all is that all the policy arguments about inter-circuit comedy are misplaced in this case. Everybody in every circuit can raise its rights. If there is a distributor in the Eighth Circuit or the Sixth Circuit who happens to come into possession lawfully of these towels, and we sue them, they could raise the question whether they have the right to do that under Myers. What Von Drell doesn't have, you know, the right to do is to say that because those people would have a defense for a claim if they came lawfully into the possession of the towels, that they have a legal right to continue providing the towels even though they lost a case in this circuit saying that the conduct is unlawful. And you mean they could, you're saying that they can't go into St. Louis and sell these distributors when St. Louis, the courts governing St. Louis say there is no infringement of that practice? I think what... I mean, that would be the most heavy-handed type of approach, I would think. The important fact, Your Honor... The fact that the distributor litigated it as opposed to... The important fact is that the conduct of Von Drell was not addressed in Myers at all. The question that was at issue was the conduct of the distributor if he came into the possession... It was the act of stuffing and whether the act of stuffing constituted the infringement. It went even further. They talked in terms of whether there was a likelihood of confusion by reason of the dispenser and they found substantively that there was no mark protecting the stuffing. But what no circuit has found, since we have a nationally registered trademark, is no circuit has found that the trademark has been canceled. And the remedy that Von Drell is seeking from the court is essentially the equivalent to a holding that our mark has been canceled elsewhere, which is an odd argument to make in the guise of remedy. Why do you say the cancellation is necessary? Basically they've said you can't... You don't have a right to enforce a trademark for stuffing in 11 states. And the question then is, okay, the Fourth Circuit says you do violate the law and you want to take that decision to allow you to enforce it in St. Louis. And I don't follow it, except in the most technical sense. I understand the argument you're making, but I don't find it very satisfying for a judicial decision. Usually, when one has a national competitor in a national market involving a national trademark, and there is behavior that one or the other thinks is unlawful, the resolution of that question would bind the parties inter se. The fact that other parties may have other rights under the laws of other circuits continues unchanged by the... Why does it bind you, your client? Because that... Your client litigated it lost. That is a preclusion argument that the court held, this court in this case, in the last appeal that Bundrel cannot assert. And so... Our court. That's our decision. But that doesn't govern what, in the two circuits, the courts have said Georgia-Pacific does not have a right to enforce it. But there is no one in this court other than Bundrel who's asserting that argument. And the point I'm making to you is that whatever the force of anyone else, if they came into this circuit or if they went into some other circuit, whose behavior has not been adjudicated in this circuit, and who has not been held to have waived these types of arguments, seems to me that the question really does not implicate any of these comedy concerns because the behavior of the defendant was adjudicated unlawful here. This court has already held that they do not have preclusion defenses because they waived it and all of their comedy arguments were more honestly made in the district court by calling them what they are, preclusion defenses on behalf of absent parties. But for the fact that you have already ruled in this case that preclusion defenses are not available to Bundrel, the basic fact of the case has not changed. They are continuing to assert derivatively the rights of parties not in front of the court. We're perfectly capable of asserting their own rights in this or any other circuit. And before you get too far, I'd like you at some point to address the treble damages. Sure. You can finish up that point if you want. I understand your notion is that there is not symmetry on the defense side because distributors were not parties to it or Bundrel was not a party to it. My only suggestion is Georgia-Pacific was a party to it and it lost. And that was the only argument to force it all through litigation again and have somebody say, oh, it's an affirmative defense. And to finish this point, that was the argument that this court heard in the last appeal and ruled was not available to this defendant. In this court. Because of waiver. And it's only because of waiver. It didn't say that it wasn't preclusive. It said it wasn't raised in time. Right. But that means that the argument is not available to this defendant who is present before the court and subject to his judgment. Whose rights were adjudicated here. But moving on to the question of treble damages, I will once again point out that, and this was the wrongful conduct by the defendant. We pointed out how they basically stole one of the dispensers. They took it apart. You know, they designed it out of this. Well, I understand all of that. The court obviously went along with you on that. There is an interesting question about what's intentional because it seems to me every violation of this nature where they believe they're right is intentional, which doesn't make it It has to be, it seems to me, if you're under A and you want to get that type of thing, it would have to be intentionally in violation that you knew was in violation, but set that aside a minute. My question is, it looked like the district court applied treble damages of B to A and it looks like in A, you don't, they're not available to you. I don't think anybody argued it to the district court that B was applicable. All right, let's set aside the waiver because I think it's just too technical at this point. And if it had been argued, you know, it would be on, it would be an argument. What's your argument that treble damages are available here? You know, the same argument that we made to the district court, which was that this was not merely an intentional volitional act. No, statutorily, what's your authority? Oh, that the district court, that the only statutory language that addresses this is that it is addressed to the discretion of the district court in equity and it may furnish damages up to three times, you know, the amount. That's damages. Right. Let me just go back, you know, I'm not totally satisfied with our discussion on the status of the record. This is what was said in the closing argument. The damages we want, that's your side saying it, Georgia Pacific saying it to the court, the damages we want, and I think from the judge's instructions you will find if we prevail, we are entitled to this, and of course the form labels it damages, is for the time to give up the profits that they made selling knockoff paper to put it into our trademark dispenser, and the only number in the record on that is the plaintiff's exhibit 266. They made a profit of $794,000. So the statement of the attorney is saying the damages we're asking for, as labeled in the form, is the profits stated in 266, and if you look at 266, it has the listing with the dates and so forth, and the jury made sure they covered that date. They gave you that exact number. The statute says if the court shall find that the amount of recovery based on profits, the amount of recovery, it didn't talk about damages or what, the amount of recovery based on profits is either inadequate or excessive, then the court can do this, and of course there's the final thing that everything has to be, no punitive, it has to be compensational. So my question is, it looked to me, it looks to me, and you can answer this, but I'll tell you, it looks to me like Larson was applied to this case as authority for trouble damages when Larson was really adjudicating a B case. May I answer the question? Sure, of course. Please. You know, it seems to me that since every member of this panel was a trial judge, you would be doing an injustice to Judge Boyle by putting him in error on the basis of arguments that nobody ever actually mentioned when the case was cited for a different purpose and went unobjected to, and the only answer- Where's the discussion of the case in the record, did you say? Yes, it's in our papers. No, in the record below. No, it's in the docket entries that have our papers and theirs. That's part of the record as well. And so I can give you the docket entries if that would be helpful. Just where they discussed the Larson case. Yes. We discussed it. They did not. They didn't address Larson at all? Not at all. We discussed it. We said this is a good analogy of what happened here. And the reason we said it was a good analogy is because under the jury instructions, which you referenced earlier, the jury was told to treat this as a passing off case. And if you look at the blue brief, their brief at page 14, it is conceded that in order to And they never mentioned that in their brief again, but the reason why we brought Larson to the court's attention is because based on how the case was tried to the jury, based on the analysis that the court did in the first appeal about the soda fountain and how this is really a passing off problem, the jury was so instructed. And then we said that this furnished a good analogy as to how the court could deal with the case. The relevancy of the Larson case was never objected. Larson was not mentioned. What about docket entry 396? Do you have any recollection on that? Yes. I believe I have it right here. Didn't they address the standard in that? If you could help me with that? I'm sorry. Didn't they address? Didn't Von Drehl address the issue of the standard that had to be met in order for damages to be troubled? And I think that the important point is that as they did at the hearing later at Pages I Can Cite, they said that the standard was willful, bad faith, or intentional. And when they came to the hearing, they stood up and said, on all of these monetary components, there is no dispute that the standard is basically the same, what you call bad faith, willfulness. And they equated both things. And so as the trial judge came to the hearing, he had every reason to believe that the dispute in front of him was a binary one. The trial judge also has to read the statute, doesn't he? In fairness, the parties shouldn't mislead the judge, and I would never suggest that. But the judge has got to hone in on what the statute requires, too, doesn't it, if the parties are objecting? For the reasons that I outlined earlier, I believe that he was justified in treating this as a damages case. But if the court does not agree, I would say that we had a colloquy in which we made a pitch to the judge as to how that did not capture the full amount of our injury, because this was a very heavy toll on our goodwill. And if you look at page 819 of the joint appendix, the district judge engaged in a colloquy with the witnesses and with counsel in which he tried to ascertain what the size of our business was compared to the potentially lawful market for the towels. And what he elicited at the hearing was that we had roughly 4 million of these units out there, and that since the infringement started, the most that Von Drehl could say was that they might be 18,000 lawful dispensers out there. And the judge then said, look, how much is each case of this paper? Did some quick math on the bench, and then he said the following. He said, by my numbers, Georgia Pacific has roughly a $400 million business in this trademark. And then he looked that in and said, even if I add everything else, the fees, the interest, et cetera, this is at the bottom of the page, it gives you perspective about the damages in this case. It is a $4 million a year. He actually just said $4 million. And the defense of this involved $5 million. It's proportional. So after considering all of our additional arguments about the damages to our goodwill and all the injuries that we suffered, he basically said, I can see how you have the bulk of this market. This is a potential serious injury to you. And even if I add the damages with the fees, it is proportional to the likely injury that you could have suffered. So that's important too. Now, I don't want to harp on the waiver, but the unfairness to a district judge is this. He could have put a lot of that in an opinion if the question had been raised to him. And we do have an adversarial system of justice that requires well-represented, well-heeled companies to come into the bar of the court and say, your honor, the relevant part of the statute is this. Once we had a jury trial that was not actually taken up on appeal, the judge was entitled to believe that the jury had a factual finding of damages and that- All right. We'll have to revisit the pleadings in the papers below. I guess we don't have them all here, do we? No. I think there are- All the material ones are in here? What you do not have in the appendix is the actual pleadings. And I think they actually are well worth reading. I'm not as interested in the pleadings as I am in the arguments presented to the court in the remedies phase. That is all in the appendix, but I think it is based on the issues that had been honed in the brief that had been filed in advance. And I cannot emphasize that sufficiently because I was going to make a reference to the one that Judge Keenan actually made. One has to read it to really take the full measure of the arguments that they make and they do not make. Okay. Thank you. Thank you, Your Honor. Mr. Phillips? Thank you, Your Honors. I'll try to be brief. Judge Shedd, I apologize, I misspoke. We did not specifically address Larson by name in our pleadings below. What we did do is that we said this categorically. This is the- Can you give us the reference? I was just going to do that. This is 339, the document 339 at page 8. This case was submitted to the jury on Georgia Pacific's request for an award of Fondrel's profits. Georgia Pacific cannot now request a multiplier as such. A request is not based upon the evidence and would be for the sole purpose of penalizing Fondrel. 15 U.S.C. section 1117A. That seems to me as plain as day to say that this is profits and under profits you don't get treble damages and in any event you cannot penalize this regardless of how you analyze it. Judge Niemeyer, you quoted the language at the trial where the lawyer for Georgia Pacific could not have been clearer. All we want by way of damages are the lost profits in this particular case. He repeated that several times to the jury, almost to the penny the jury gave him exactly what he wanted. This is not a damages case. This is a profits case and therefore you have to determine whether or not the compensation was adequate to make any kind of an enhancement and the court didn't make that kind of a determination. What was said below, Mr. Estrada, suggests that objection to the injunction was not made below. The scope of the injunction. Well clearly we made an objection to the scope of the injunction but even aside from that the judge himself specifically said during the oral argument, well I can't issue an injunction that's going to stop people from doing something in Tennessee in those states where this is perfectly legal. And then we got up and said yes your honor, you cannot do that. So the issue was squarely presented to him. If he said that, what was he doing when he had it? I don't know what happened between the two. He was convinced by a great argument on the other side. Perhaps. But for whatever reason, he clearly had it in mind. He nevertheless went ahead and issued a nationwide injunction and for the reasons you've already articulated that's simply not appropriate in the circumstances of this case. I ask you to set aside the monetary portion of the award and remand for an additional assessment of what's an appropriate equitable remedy in this particular case. If there are no other questions, your honors, thank you so much. Thank you. We'll adjourn court sine die and then come down and greet counsel.
judges: Paul V. Niemeyer, Dennis W. Shedd, Barbara Milano Keenan